**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**ADRIAN GUTIERREZ**<br><br>**Defendant.** | **Case No. 24-CR-20082** |

## UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO REVOKE DETENTION ORDER

The United States, through undersigned counsel, hereby objects and responds to defendant's Motion to Revoke the detention order issued in this matter.

## I. BACKGROUND

On October 16, 2024, defendant was charged by way of Indictment with one count of Sexual Exploitation of a Minor – Production of Child Pornography, in violation of 18 U.S.C. § 2251(a), a crime that carries with it a mandatory minimum sentence of 15 years. (Doc. 1) Several days later, on October 22, 2024, defendant was arrested in his home state of California and had his initial appearance the next day in the United States District Court Central District of California. (Doc. 2) Defendant was appointed an attorney from the Federal Public Defender's Office at that initial appearance and the Government requested detention. *Id*. The matter was set for a detention hearing on October 25, 2024. *Id*.

On October 25, 2024, a contested hearing was held, and the magistrate judge issued an order detaining defendant for the duration of the proceedings finding that the presumption under 18 U.S.C. §3142(e) had not been rebutted. *Id*. The Court's detention order, issued the same day, concluded that defendant posed a serious flight risk and a risk of safety to other person and the

community based on the Pretrial Services Report as well as the indictment and proffered information during the hearing. (Doc. 4)

Defendant was then brought to the District of Kansas and had his first appearance on December 2, 2024. At his initial appearance, the Honorable Theresa James ordered him detained and issued a minute sheet indicating the same. (Doc. 5) Three months later, defendant filed his request for revocation of the detention order.

## II. LEGAL AUTHORITY AND ARGUMENT

### a. Defendant's Motion to Revoke Detention is Untimely

Pursuant to 18 U.S.C. §3145(b), "if a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." The District of Kansas would be considered "the court having original jurisdiction over the offense" because it is the district in which the indictment against defendant was returned and in which prosecution is pending. *United States v. Cisneros*, 328 F.3d 610, 615 (10th Cir. 2003). Further, it is proper for a district judge, not a magistrate judge, to rule upon such a motion. *Id*. Once properly before the district judge, an 18 U.S.C. §3142 is conducted. *Id*. at 616.

While acknowledging that the Tenth Circuit's decision in *United States v. Doby*, 928 F.3d 1199 (10th Cir. 2019) may bar a timeliness argument, the government asserts that the Court should deny the defendant's motion as untimely pursuant to Federal Rule of Criminal Procedure 59(a) to preserve such argument.

Section 18 U.S.C. §3145(b) does not specify a time limit, however, the hierarchy suggested by §3145(b) is consistent with the ultimate decision-making power and continuing jurisdiction

over the actions of a magistrate judges that the district court judges possess. See *United States v. First Nat'l Bank of Rush Springs*, 576 F.2d 852, 853 (10th Cir. 1978); and *United States v. Raddatz*, 447 U.S. 667, 681, (1980).

Therefore, §3145(b) is subject to the time limitations set forth in Federal Rule of Criminal Procedure 59(a). That rule provides that in nondispositive matters, a party may file objections to the magistrate judge's order within 14 days, and the district judge must timely consider the objections. Fed. R. Crim. P. 59(a). Further, "each district shall establish rules pursuant to which the magistrate judges shall discharge their duties." 28 U.S.C. § 636(b)(4). The District of Kansas implemented the Rules of Practice of the United States District Court for the District of Kansas. Those rules require that a party file for review of the magistrate judge's order within 14 days. Rule 72.1.4(e).

The Tenth Circuit in *Doby* took issue with the government's failure to preserve the timeliness issue as it relates to the interplay of §3145(a) and Rule 59(a). "Notably, the government did not invoke Rule 59(a), a fourteen-day time limit, or any law at all in the single clause of its response concerning timeliness of [defendant's] challenge. Instead, [defendant] first got notice that Rule 59(a) and its fourteen-day time limit were used against him when the district court entered its order denying his motion." *Doby* at 1203.

In the present matter, the government is asserting such an argument. Further, the present case deals with a motion under §3145(b) and the *Doby* case analyzed a motion under §3145(a). Finally, the basis for the §3145 motion in the present case is not based on new information and is instead information defendant knew or had access to at the time of his December 2, 2024, appearance, as further argued below. Therefore, this case can be distinguished from *Doby*.

The Order of Detention was issued by the California magistrate judge on October 25, 2024.

(Doc. 4) Even if the time prior to his arrival in the District of Kansas is excluded, a magistrate judge in this District, the Honorable Theresa James, ordered defendant detained on December 2, 2024. (Doc. 5) The defendant does not provide any new information to justify his release plan nor cite any cause for the delay in filing his motion to revoke. The defendant's motion was filed far outside the deadlines proscribed by Federal and Local Rules and should therefore be denied as untimely.

b. **There are no conditions or combinations of conditions to reasonably assure appearance or safety**.

Should the Court find that defendant's motion is not time barred, his request should still be denied as there are no conditions or combination of conditions to reasonably assure the appearance of the defendant nor the safety of any other person or the community pursuant to 18 U.S.C. 3142.

> Under the Bail Reform Act, a defendant may be detained pending trial only if a judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. A judicial officer may make such a finding only after holding a hearing according to the procedures specified in 3142(f), and the government bears the burden of proof at that hearing. The government must prove risk of flight by a preponderance of the evidence, and it must prove dangerousness to any other person or to the community by clear and convincing evidence.

*United States v. Cisneros*, 328 F.3d 610, 617 (10th Cir. 2003)(internal citations and quotations omitted).

Title 18, United States Code, Section 3142(f)(1-2), identifies when the Court must hold a detention hearing, which includes and is not limited to cases involving crimes of violence and/or any felony offense (that is not otherwise a crime of violence) with a minor victim. See 18 U.S.C. §§ 3142(f)(1)(A)&(E). In such cases, and others so enumerated, there are rebuttable presumptions applicable to the detention determination. See 18 U.S.C. §§ 3142(f)(2-3). In other words, there are cases where it is presumed that no conditions of release will assure a defendant's appearance,

the safety of the community, or both.

In the defendant's case, Section 3142(e)(3)(E) establishes a rebuttable presumption that no condition or combination of conditions will reasonably assure his appearance as required and the safety of other people and the community, in that there is probable cause (in the form of a grand jury indictment) to believe that defendant committed an enumerated offense, or offenses, involving a minor victim.

In a presumption case, the burden of production shifts to the defendant. However, the burden of persuasion regarding risk-of-flight and danger to the community always remains with the government. The defendant's burden of production is not heavy, but some evidence must be produced. *United States v. Stricklin*, 932 F.2d 1353, 1254-1355 (1991). The Tenth Circuit consistently notes that "[e]ven if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain." *Stricklin*, 932 F. 2d at 1355 (citing *United States v. Cook*, 880 F.2d 1158, 1162 (10th Cir. 1989)).

Further, even assuming that a defendant rebuts the presumption, the United States Code specifies four additional factors for the court to consider in its analysis of whether any condition or combination of conditions would assure a defendant's appearance before the Court and the safety of the community. Section 3142(g) provides that the Court "shall…take into account the available information" regarding:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence… or involves a minor victim;

(2) the weight of evidence against the person;

(3) the history and characteristics of the person, the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings;

(4) the nature and seriousness of the danger to any person or the community posed by the person's release.

Based on the information recently provided by probation regarding the proposed release plan that would involve defendant potentially having contact with minors and is not a locked down facility, government asserts defendant will not meet his burden of production to rebut the presumption. However, even if defendant presents some evidence that his proposed release plan is actually viable, given his charges, the United States contends that each of the above referenced factors, and all of them in combination, weigh heavily in favor of detention in this case.

Under § 3142(g)(1), this Court is expressly directed to consider the nature and circumstances of the offense charged, including that the offense is a crime of violence and involves a minor victim. This particularly egregious case involves the defendant finding a young child, age 10, on an online chat forum commonly used by children, lying about his age, luring the child off the platform and onto Discord, an application commonly used by those sexually interested in children, with the promise of Fortnite money, then telling the child to perform various sexual acts on a live video call through Discord in order to obtain the Fortnite money, which the child did.

The charged victim is only one of dozens of known victims from all over the country. Defendant utilized this same technique and, in some instances, screen recorded the child performing the sexual acts on camera, in order to victimize innumerable children. Defendant utilized multiple applications to search for children and to chat with children wherein these crimes were committed. FBI has identified 18 different applications, all accessed through the internet, used by the defendant for chatting and/or gaming (wherein he located children) and/or money exchange (wherein he sent some children money in exchange for the sexually explicit conduct performed on video). From the Discord application alone, there are 208 chats with

individual users, the overwhelming majority of those individual users were children[1]. FBI has identified 39 victims of production/attempted production of child pornography and/or who had received sexually explicit material from the defendant, one such victim is the charged Kansas child. FBI is actively working on identifying the remaining children who have been the victim of an exploitation offense at the hands of defendant.

In addition to producing child pornography with various children, defendant purchased or attempted to purchase child pornography online through various online sources, including the Telegram application. Some of the child pornography defendant purchased or attempted to purchase was the same kind of child pornography he was producing, wherein children are exploited over a video call and the perpetrator screen records the video call.

Based on the substantial amount of evidence collected, it appears defendant was engaged in this criminal conduct on almost a daily basis, sometimes multiple times a day, sometimes for hours at a time, sometimes chatting with multiple children in a single online session. The true number of children defendant has victimized is unknown.

Defendant was living in a home full of people and holding down a job while engaged in this behavior as almost a second full time job – successfully hiding the behavior from everyone, including his girlfriend with whom he worked. Therefore, the nature and circumstances of the offense weigh in favor of detention.

Under § 3142(g)(2), the weight of the evidence is overwhelming. The evidence includes significant electronic data linking defendant and his devices to the online accounts and applications wherein he committed his crimes. Defendant's usernames and account information

---

[1] There is evidence that defendant engaged in this same behavior when he was under the age of 18 but that evidence is not included in this calculation.

for these online accounts and applications used his known name, gmail, phone number, and in certain situations, included photos of the defendant's face, driver's license, social security card, resume, health insurance documents, and other corroborative identification and attribution information mixed in with evidence of his crimes. Defendant made multiple post-arrest statements to the effect that he had messed up and was in big trouble. Defendant acknowledged his phone number as well as the discord account from which a significant amount of evidence was contained. To be certain, the defendant is now aware of the substantial amount of evidence against him in the present case,[2] which involves a 15-year mandatory minimum prison sentence, and aware he could potentially face additional charges in additional jurisdictions related to his pervasive criminal activity.

Under § 3142(g)(3), the court must expressly consider the history and characteristics of the defendant. Defendant asserts that a detention review is warranted because defendant has a new release plan to propose to the court, one based on his alleged substance abuse issues that necessitate treatment.

Defendant made one comment to arresting officers that he abused drugs. Notably, his comments to pretrial services before the initial detention hearing include that "he experimented with marijuana when he was in high school but has not used the substance since that time. He drinks alcohol socially." Regardless of whether he was being truthful or when he was being truthful, whether or not he was actively abusing substances at the time of arrest is a piece of information he was aware of when the initial detention hearing was held in California and when his initial appearance was held in Kansas. It cannot therefore be classified as "new information." See *United States v. Robertson*, 852 Fed. Appx. 331, 338 (10th Cir. 2021) (In reversing the

[2] Government has produced 11,289 files and 1,956 folders of discovery as of the filing of this pleading.

District Court's order to release defendant pursuant to §3145(b), the Tenth Circuit found defendant could have and did present his halfway house proposal at his earlier detention hearing. "Reconsideration is only appropriate when allegedly new evidence was previously unavailable; it is not appropriate when the supporting facts were available at the time of the original motion.")

Furthermore, defendant was already in regular counseling and on medication for his mental health issues at the time of arrest. Defendant stated to pre-trial services, as documented in the report provided to the parties, he would remain in such treatment if released. While treatment for mental health and substance abuse issues may be different, the Court indicated it considered the information in the pre-trial services report and still determined detention was appropriate.[3] Again, defendant's willingness to participate in a treatment program to address potential issues associated with his offending is not "new information."

Beyond that, as the Court considers the (g)(3) factor, walking through the list of "family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history" all end up favoring detention.

The defendant's family ties are all outside the jurisdiction. Additionally, as the bond report indicates, the defendant's father, with whom he was living at the time of arrest, is present in the United States illegally. FBI confirmed that defendant has an expired passport, and its last use was inbound to the United States as a pedestrian at the Otay border crossing from Mexico on June 30, 2016. However, his mother's most recent inbound trip was on August 18, 2023, coming from San Salvador. Defendant's mother's national origin is San Pabo Tacachico, El Salvador.

---

[3] Government has requested the audio from the California detention hearing and will make a copy available to the Court and defense upon receipt to provide additional information about what was discussed.

Based on agents' interactions with the family during arrest, defendant's mother appeared to be only Spanish speaking. Defendant has no known connections to Kansas and appears to have significant family ties to Mexico. Combined with the potential for severe punishment, defendant is at an increased risk to flee.

While the defendant does not have a documented criminal history (i.e. charges, arrests, or convictions), that is not unusual for these types of offenders who are better able to fly under the radar for prolonged periods of time. Notably, the presumption of detention applies irrespective of the defendant's criminal history. Furthermore, defendant's criminal *behavior* is longstanding and pervasive, as outlined herein, he just was good at not getting caught.

Under § 3142(g)(4), the Court is to consider the nature and seriousness of the danger to any person or the community what would be posed by the defendant's release. "The concern about safety is to be given a broader construction than the mere danger of physical violence. Safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community." *United States v. Kroeker*, No. 22-3092, 2022 WL 2610344, at *4 (10th Cir. July 8, 2022) (citing *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989). Congress has determined that the existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children. *United States v. Davin*, No. 12-10141-EFM, 2012 WL 2359419 at *3 (D. Kan. 2012). The evidence indicates that defendant poses a real danger to minors, both in person and through the internet. See also *Kroeker* at *4.

In this case, the defendant's crime involves *actual* harm to minors, of the most egregious nature. Here, he encouraged the sexual exploitation of a 10-year-old child (and many others). He also sought, saved, and consumed similar depictions of the sexual abuse of other very young

children. It cannot be denied that the consumption of child pornography encourages and facilitates the abuse of children. It cannot be denied that these crimes represent the cutting edge of offending behavior – utilizing the anonymity of the internet to avoid detection. *See, e.g.,* New York Times "The Internet Is Overrun with Images of Child Sexual Abuse: What Went Wrong," Sept. 28, 2019 (available online at https://www.nytimes.com/interactive/2019/09/28/us/child-sex-abuse.html). The seriousness of the danger posed by these crimes, for which a Grand Jury has found probable cause, is highlighted by: 1) the 15-year mandatory minimum imposed for production of child pornography; 2) the fact that a presumption of detention applies; and 3) the repeated direction to consider detention for these charges as either crimes of violence or otherwise involving minor victims. The fact that the nature of the defendant's offense is so horrific and abhorrent, and necessarily involved actual harm to minor victims, weighs heavily in favor of detention.

More generally, the danger posed by the defendant is considerable. A "relapse" would involve the sexual abuse or exploitation of a child, which can occur on-line or in person. The risk is exceedingly high, particularly where the defendant has engaged children in online communication for his sexual pleasure, and he was engaged in his child exploitation activities over an extended period of time. Given the defendant's clear sexual preference for children, and his inability to curb his appetite (despite being repeatedly shut down by his service provider), this Court cannot be reasonably assured that the defendant will abide by any set of conditions the Court might impose. In light of the overwhelming evidence in combination with the substantial penalties, the defendant may be strongly motivated to flee the jurisdiction rather than face the charges.

There is no set of conditions that can ameliorate the concerns raised in this case. US Probation is not physically equipped to detect unauthorized internet access – the "computer monitoring" done by US Probation merely checks usage of a known computer at a known location.

Moreover, US Probation is not able to monitor every type of computer or operating system, further limiting the utility of that "condition." Importantly, US Probation does not have capacity or ability to forensically check WiFi routers or modems to detect unauthorized devices, particularly in a group home set up like the one suggested by defendant. In short, despite their best efforts[4] and intentions, US Probation is not able to *effectively* mitigate the dangers and risk associated with this type of defendant. It also bears pointing out that his proposed release plan adds obstacles for US Probation for supervision – simply put, it will not be easy for US Probation to confirm compliance. While GPS monitoring may alert US Probation that he's run, or a curfew keep him at home, neither does anything to prevent him from returning to the internet to satisfy his abiding sexual interest in children. The reality of what supervision is able to do is yet another concern this Court should consider, and that reality weighs in favor of the defendant's detention.

**III. <u>CONCLUSION</u>**

For the foregoing reasons, the Court should deny defendant's motion to revoke.

Respectfully Submitted,

DUSTON J. SLINKARD
Acting United States Attorney
District of Kansas

*s/Audrey McCormick*
AUDREY MCCORMICK, D.Kan. #24847
Assistant United States Attorney
500 State Ave., Suite 360
Kansas City, KS 6617
Tele: (913) 551-6730
Fax: (913) 551-6541

[4] This is not because US Probation does not *want* to do these things, but because they are not *able* to do these things through want of technological resources, training, or caseload.

e-mail: Audrey.McCormick@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that on March 7, 2025, I electronically filed this motion with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all attorneys of record.

/s/Audrey McCormick
Audrey McCormick
Assistant United States Attorney